[Civ. No. 3916.  Second Appellate, District, Division Two.—July 25, 1922.]

## MARY F. FRANCIS, Petitioner, v. SUPERIOR COURT OF KERN COUNTY et al., Respondents.

[1] ATTACHMENT — UNDERTAKING — INCREASE IN AMOUNT — JURISDICTION.—The superior court has jurisdiction to hear and determine an application for an increase in the amount of an undertaking on attachment, as the clerk in fixing the amount acts as a constituent part of the court and not as a separate and independent judicial entity.

PROCEEDINGS on application for a Writ of Prohibition to prevent the hearing of a motion to increase an undertaking on attachment. Writ denied.

The facts are stated in the opinion of the court.

Matthew S. Platz for Petitioner.

George E. Whitaker for Respondents.

FINLAYSON, P. J.—This is an original application for a writ of prohibition directed to the superior court for Kern County, and the Honorable Howard A. Peairs, Judge,

commanding and directing them to desist from hearing a motion to increase the amount of an undertaking on attachment which had been given in an action wherein the petitioner here is the plaintiff and L. W. Lowell and others are the defendants. To the alternative writ of prohibition, issued out of this court, respondents have made a return which petitioner has not seen fit to traverse.

The petition and the return thereto disclose the following facts: Petitioner commenced an action against L. W. Lowell and others to recover $11,250, alleged to be due on a contract. Petitioner, as the plaintiff in that action, caused an affidavit for attachment to be filed in the superior court; at the same time the clerk of that court fixed the amount of the undertaking on attachment at $500, as he was authorized to do by section 539 of the Code of Civil Procedure, whereby it is provided that the clerk, before issuing the writ, shall require an undertaking on the part of the plaintiff in a sum not less than $200 and not exceeding the amount claimed by the plaintiff. Petitioner gave an undertaking in the amount required by the clerk—$500—and thereupon the writ of attachment was issued. Acting under this writ, the sheriff, on March 11, 1922, levied upon certain debts then due and owing to the defendants in that action by the Midway Northern Oil Company, which debts were sufficient to satisfy plaintiff's demand for $11,250, with interest thereon at seven per cent per annum from the date of the commencement of the action. The return, which, as we have stated, has not been traversed by petitioner, further alleges that it will take approximately three years before the action in which the attachment was issued can be finally concluded; that the interest which will accrue on the moneys or debts garnisheed by the sheriff, together with costs, will amount to approximately $2,500; that if the defendants in that action shall prevail the sum of $500 named as the penalty of the undertaking on attachment will be entirely inadequate to compensate them for the damages which they will sustain by reason of the attachment; and that if, pending the final outcome, disaster should overtake the oil company whose indebtedness to the defendants was thus levied upon and garnisheed, the full amount of $11,250 so tied up by the

attachment might be dissipated and the defendants further damaged thereby.

The defendants whose property has thus been attached have given notice to the plaintiff in that action, the petitioner here, that they will move the superior court for Kern County to increase the amount of the undertaking on attachment from $500 to $11,250, on the ground that an undertaking in the sum of $500 is wholly inadequate. It is to prevent the hearing of that motion that the present proceeding was commenced, petitioner claiming that the superior court is without jurisdiction to alter the amount of the undertaking once it is fixed by the clerk of the court prior to the issuance of the writ.

If the clerk could have been aware that solvent credits, aggregating the full amount sued for, due and owing to the defendants, were about to be attached and held for three years, possibly, while awaiting final disposition upon a crowded calendar, there can be little doubt that he would have required a very different undertaking. The clerk cannot be said to have found judicially upon the amount of security which was really required, for it does not appear that the circumstances as at present seen, now that the attachment has been levied, were brought to his attention when fixing the amount of the undertaking. And if the security as originally required by the clerk proves now to be insufficient, why cannot the superior court, looking to the interests and rights of both plaintiff and defendants, make it sufficient? The clerk, who is a ministerial officer, is an arm of the court and an essential constituent thereof (*In re Durant,* 60 Vt. 176 [12 Atl. 650]); and when fixing the amount of the undertaking before issuing the writ he is but acting as a constituent part of the court. He is not exercising jurisdiction as a separate and independent tribunal. It is true that in determining the amount of the undertaking which should be required of a plaintiff the clerk is exercising a judicial or a *quasi*-judicial function, but his act and judgment is not the act or judgment of an independent judicial entity. And if subsequent developments, arising after the levy of the writ, show that the amount of the undertaking required by the clerk before issuing the writ is insufficient to indemnify the defendant for the costs which may be awarded him and the dam-

ages which he may sustain by reason of the attachment, why may not the court, whose ministerial officer prescribed the amount of the undertaking in the first instance, make an order, after a hearing, increasing the amount, upon a showing that the security is inadequate?

The security to be given by a plaintiff who obtains a writ of attachment is intended to be an indemnity to the defendant in the action against his costs and damages. The affidavit on attachment, which is intended to prevent the wrongful suing out of the writ, is a restraint upon the conscience of the plaintiff, and the undertaking imposes an additional restraint by fixing a definite liability upon the plaintiff and his sureties as indemnity to the defendant against loss from the wrongful and vexatious use of the process. (*Ex parte Damon,* 103 Ala. 477 [15 South. 862].) But if, through an error of judgment or a mistake of fact, the clerk has failed to require an undertaking in an adequate amount, the defendant may have no real protection against loss from the wrongful or vexatious use of the writ unless the court has the right and the power to require additional security.

[1] We think the power of the court to require an increase in the amount of the undertaking is incidental to the provisional remedy of attachment. It is true that in some jurisdictions this power is expressly conferred by statute, but it exists without such express statutory authorization. Thus, in *Manda* v. *Etienne,* 13 App. Div. 237 [43 N. Y. Supp. 194]—a case involving the jurisdiction of the special term to require the plaintiff in an action to give an additional undertaking on attachment—it was said: "The plaintiff's main contention is that the special term 'was wholly without jurisdiction, power or authority to make' the order in question. He seems to overlook section 682 of the Code of Civil Procedure, where this power is expressly conferred. It is a power which is frequently exercised. *Before it was thus expressly conferred, it was held to be an incident to the regulation and conduct of provisional remedies. (Whitney* v. *Deniston,* 2 Thomp. & C. (N. Y.) 471.)" (Italics ours.) And in the case thus referred to (*Whitney* v. *Deniston,* 2 Thomp. & C. (N. Y.) 471) we find this language: "The court has general power to discharge attachments the same as all other provisional

remedies. (Code, sec. 241.) It may be exercised for all proper reasons, including those where, for any cause, the plaintiff's proceedings are in any respect defective, and they certainly are so where the amount of the undertaking is insufficient to indemnify the defendant for the costs which may be awarded to him and the damages he may sustain by reason of the attachment. (Code, sec. 230.) It is the intention of the law that the defendant shall have that indemnity where his property is attached; and if the undertaking given, when the attachment is obtained, is insufficient for that purpose the law cannot be properly administered without requiring an adequate increase in the amount to be made. *The power is incidental to all the provisional remedies provided by the code,* and its existence is in substance provided for in the authority which the court has for supplying omissions in any proceeding.'' (Italics ours.) In *Ex parte Damon, supra,* it is said that the undertaking on attachment ''must be regarded as defective when it is insufficient in security, as well as when it is lacking in some particular which, while it does not render it absolutely void, does render it an imperfect obligation for the purposes intended. (1 Wade, Attachm., secs. 114, 115, 288; *Bumberger* v. *Gerson,* 24 Fed. 257.) It is the right, then, of the defendant to have the attachment dissolved whenever, at any stage of the cause, the bond shall become defective or insufficient, as an indemnity, on account of the insolvency of its securities; but the plaintiff should be accorded the right of maintaining his cause by repairing a defect brought about by no fault of his.'' (See, also, *Gapen* v. *Stephenson,* 18 Kan. 140, and *Bumberger* v. *Gerson,* 24 Fed. 257.)

Our conclusion is that the superior court is not without jurisdiction to hear and determine the application for an increase in the amount of the undertaking on attachment.

The alternative writ of prohibition is discharged, and the application for a peremptory writ of prohibition is denied.

Works, J., and Craig, J., concurred.